**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CR-60329-RKA**

**UNITED STATES,**

   *Plaintiff,*

v.

**ROBERT CANTONE,**

   *Defendant.*
_____/

**ORDER**

On December 6, 2019, this Court sentenced Robert Cantone to eighteen months in prison. Four months later, Mr. Cantone sent a letter to the Bureau of Prisons ("BOP"), in which he sought compassionate release. When the Warden of the facility denied his request, Mr. Cantone filed this Motion for Compassionate Release (the "Motion") [ECF No. 131], asking the Court to convert the balance of his prison term to home confinement. On September 4, 2020, Mr. Cantone filed an Emergency Motion for Compassionate Release (the "Emergency Motion") [ECF No. 134], seeking "an order immediately permitting release." The Court struck the Emergency Motion as duplicative. *See* Order to Strike [ECF No. 142]. The Government opposes release. *See* Government's Response in Opposition to Defendant's Emergency Motion for Compassionate Release (the "Response") [ECF No. 135].

After a careful review of the record, the Court concludes that Mr. Cantone is not entitled to the relief he seeks. In essence, he cannot show that his medical conditions—which are common and treatable with widely-available medications—are the kinds of "extraordinary and compelling reasons" that would justify the remedy he's after, even in the midst of the COVID-19 pandemic.

Accordingly, the Court **DENIES** the Motion.

## THE FACTS

Mr. Cantone was once the president of Jet Link Inc. ("Jet Link")—an authorized broker for the Department of Defense that provided aviation supplies, parts, and services. *See* Motion ¶¶ 3–4. Mr. Cantone and his co-defendants defrauded the government by claiming that they were providing it with new (or basically new) parts, which (Jet Link claimed) it had fully inspected, when, in fact, Jet Link didn't even obtain some of the parts until *after* the government had awarded the bid. *Id.* ¶ 5. In some instances, Jet Link provided the government with parts that were nonconforming. *Id.*

In 2019, Mr. Cantone pled guilty to one count of conspiracy to commit aircraft parts fraud, in violation of 18 U.S.C. § 38(a)(3). *See id.* ¶ 9. Although he maintained that he did not know his conduct was unlawful, he nonetheless cooperated with the government and accepted responsibility. *Id.* ¶ 6. The Court sentenced him to eighteen months in prison. *Id.* ¶ 10. His term began on January 10, 2020, and his release is scheduled for April 19, 2021. *Id.* As of this writing, Mr. Cantone has about two months left on his sentence.

In an April 22, 2020 Letter to the Warden ("Letter") [ECF No. 135-1], Mr. Cantone made a formal request for compassionate release. He averred that he was a low-risk offender with no criminal history who had committed a nonviolent crime and was unlikely to reoffend. *Id.* at 1. He added that he would be at a high risk of serious medical complications if he were to contract COVID-19. *Id.* On this issue, Mr. Cantone wrote that his age alone—he was 74 at the time—put him at serious risk. And, he claimed, his high blood pressure and pre-diabetes exacerbated that risk. *Id.* Mr. Cantone said that his medical conditions justified release because they qualified as "extraordinary and compelling" circumstances under § 3582(c)(1)(A)(i). *Id.* at 2. The Warden

denied the request on June 10, 2020. *See* June 10, 2020 Letter from Warden ("Warden Letter") [ECF No. 135-2].

Mr. Cantone makes substantially similar arguments in his Motion. He reiterates that the § 3553(a) factors favor a sentence modification because (1) his crime was "nonviolent," (2) he did not reap substantial profits from the fraud, and (3) he is not a risk to public safety. *See* Motion at 5–11. He also argues that, because of his age, his high blood pressure, and his pre-diabetes, his health would be seriously compromised if he were to contract COVID-19. *Id.* at 14. Finally, he describes the conditions in federal prison—in particular, his close proximity to others—and he points out that the pandemic has worsened in Florida. *Id.* at 18.

## THE LAW

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). Federal law permits a district court to modify a prisoner's sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," and sets forth the necessary analysis for determining whether the petitioner is entitled to such a reduction. *See* 18 U.S.C. § 3582.

*First*, the Court must ascertain whether the prisoner "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider [ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined

in U.S.S.G. § 1B1.13cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id. See United States v. Stuyvesant*, 2020 WL 1865771, at *2 (S.D. Fla. April 14, 2020).

**ANALYSIS**

### I.   Exhaustion of Administrative Remedies

Mr. Cantone has exhausted his administrative remedies. The Warden, after all, rejected Mr. Cantone's request before he filed this Motion. *See* Warden Letter. Mr. Cantone also waited more than thirty days after sending his Letter before filing this Motion. *See* Letter; *cf.* § 3582(c)(1)(A). The Government, in any event, does not contest exhaustion. *See generally* Response.

### II.   18 U.S.C. § 3553(a)

Mr. Cantone argues that the § 3553(a) factors weigh in favor of a sentence reduction. *See* Motion at 5–11. But the Court considered those factors when it first sentenced Mr. Cantone. He did not appeal the Court's sentence, and the deadline to do so has passed. Mr. Cantone therefore does not (and cannot) challenge this Court's application of the § 3553(a) factors. Thus, "to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(a), the § 3553(a) factors counsel *against* any modification or reduction now. *See United States v. Post*, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (declining to reconsider the § 3553(a) factors in a motion for a reduced sentence because "much of the information that [the defendant] provide[d] in his [motion] was before the Court at the time of his sentencing").

### III.   18 U.S.C. § 3582

The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

Because Mr. Cantone does not claim that he qualifies for release under § 3582(c)(1)(A)(ii), *see generally* Motion; *see also* Letter at 2 n.1,[1] his request turns on whether there are "extraordinary and compelling reasons" for a reduction under § 3582(c)(1)(A)(i). Although § 3582 does not define the "[e]xtraordinary and compelling reasons" that warrant a reduction, Congress has authorized the United States Sentencing Commission to "describe what should be considered extraordinary

---

[1] Although Mr. Cantone is 74 years old, he acknowledges that he has not served 30 years of a sentence imposed under 18 U.S.C. § 3559(c).

and compelling reasons for sentence reduction [under § 3582]," 28 U.S.C. § 994(t). The Commission has helpfully defined the contours of the test as follows:

> 1. **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.**--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

As a threshold matter, the reference to "subdivision (2)" requires Mr. Cantone to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). Mr. Cantone bears the burden of establishing that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). The Government does not suggest that Mr. Cantone is a danger to the safety of others or to the community at large, *see generally* Response. And, after considering the above factors, the Court finds that he is not. Mr.

Cantone was convicted of a non-violent crime and has no history of committing violent offenses. He is a veteran of the United States Air Force, where he received a Commendation Medal, and he has undertaken numerous charitable activities. *See* Motion at 8–10.

Nevertheless, the Motion must be denied because he has failed to show "extraordinary and compelling reasons" for a sentence modification. Again, Mr. Cantone bears the burden of establishing that compassionate release is warranted. *See Hamilton*, 715 F.3d 337; *Heromin*, 2019 WL 2411311, at *2.

To begin with, Mr. Cantone cannot satisfy the "Age of the Defendant" test: although he is 74 years old, he has not alleged that he suffers from any age-related decline—any "serious deterioration in physical or mental health because of the aging process." *See generally* Motion. His request for relief therefore depends on his ability to meet either of the two prongs of the "Medical Condition of the Defendant" test. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The second requires him to show that he suffers from a condition "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at n.1(1)(A)(ii).

Mr. Cantone does not contend that his pre-diabetes or high blood pressure qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). Nor does he claim that his conditions are, by themselves, (1) "serious physical or medical condition[s]," (2) "serious functional or cognitive impairment[s]," or (3) conditions contributing to his "deteriorating physical or mental health," as required by U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii). *See id.*[2] Instead, he

---

[2] Mr. Cantone has not submitted any medical records to support his claim. Nevertheless, the Government acquired his health records from the BOP—which, it argues, do not reveal any other serious underlying conditions. *See* Response at 12.

8

claims that these conditions, when coupled with the ubiquity of COVID-19, threaten his health. *See generally* Motion. For the following reasons, his health conditions and the COVID-19 pandemic do not, together, warrant a sentence reduction here.

*First*, old age alone is not a sufficient ground for compassionate release, even when coupled with the possibility of contracting COVID-19. *See United States v. Rubio*, 2020 WL 7640734, at *2 (M.D. Fla. Dec. 23, 2020) (holding that the prisoner's "age, alone or in combination with his [hypertension, asthma, and obesity]," did not constitute extraordinary and compelling circumstances (cleaned up)); *United States v. Haney*, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) ("[I]if [the prisoner's] age alone were a sufficient factor to grant compassionate release [in light of COVID-19], it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release and that would arguably have a devastating effect on a national community that is now itself so under stress."). Additionally, although the CDC has said that the risk of severe illness due to COVID-19 increases with age, it has concluded that the greatest risk of severe illness from COVID-19 is among those 85 or older. *See COVID-19, People at Increased Risk: Older Adults*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Feb. 9, 2021).

*Second*, pre-diabetes—unlike Type I and II diabetes—does not appear on the CDC's list of conditions that create a risk of COVID-19 complications. *See COVID-19, People at Increased Risk: People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 9, 2021). And, while the CDC says that people with high blood

9

pressure "*might*" be at risk of severe illness from COVID-19, it does not say that they "*are*" at high risk. *Id.* (emphases added). High blood pressure, moreover, is common amongst older Americans and is not an "extraordinary condition." *United States v. Wilson*, 2020 WL 4193624, at *2 (M.D. Fla. July 21, 2020) ("[N]either asthma nor high blood pressure is an extraordinary condition. The C.D.C. reports that 108 million adults in the United States (about 45% of the adult population) have high blood pressure or take medication for the condition."). Indeed, a different Judge on this Court has explained that "virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the coronavirus, but this does not entitle every inmate over 50 to be released." *United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020).

*Third*, Mr. Cantone provides no evidence to support his view that his conditions increase his risk of *contracting* COVID-19. On this issue, he merely cites general conditions inherent to incarceration. *See generally* Motion. This isn't enough. *See United States v. Smith*, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020) ("[G]eneral concerns about possible exposure to COVID-19 do not meet the criteria for an extraordinary and compelling reason under U.S.S.G. § 1B1.13."). The Montgomery Federal Prison Camp, where the defendant currently resides, is a minimum-security camp that houses approximately 336 federal inmates. *See* FPC Montgomery, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/mon (last visited Feb. 9, 2021). Mr. Cantone does not mention the conditions there, nor does he discuss the measures the prison has taken to keep its prisoners safe. *See generally* Motion. And, without knowing more about where Mr. Cantone plans to reside or with whom, the Court cannot say for sure that Mr. Cantone's risk of contracting COVID-19 would be lower at home in Broward County (where COVID-19 rates have been exploding) than at Montgomery FPC. In short, Mr. Cantone has not carried his burden of

showing that he is at a greater risk of *contracting* COVID-19. *See United States v. Hylander*, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 17, 2020) (denying compassionate release because the 66-year-old, pre-diabetic defendant, suffering from chronic hypertension, failed to establish that COVID-19 materially affected operations at the prison).

*Fourth*, even if he *were* to contract COVID-19, Mr. Cantone submits no evidence that his conditions would "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility," *see* U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii), or that he's significantly more vulnerable than other inmates. Mr. Cantone does not allege that he has been unable to receive treatment at his facility or that the plan proposed by the BOP is inadequate to manage the pandemic. *See generally* Motion. In fact, his blood pressure has been treated by BOP medical personnel and has been controlled by prescription medication, which Mr. Cantone self-administers. *See* Response at 13; *see also Cannon v. United States*, 2019 WL 5580233, at * 3 (S.D. Ala. Oct. 29, 2019) (denying compassionate release to a 71-year-old prisoner suffering from back and stomach issues, high blood pressure, diabetes, skin irritation, and loss of hearing because the prisoner could not show that his conditions prevented him from providing self-care within the facility). Finally, according to the Government, Mr. Cantone's most recent blood-pressure measurements demonstrate that his condition is manageable and under control. *See* Response at 13; *see also United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (a chronic condition that can be managed in prison is not a sufficient basis for compassionate release).

*Fifth*, Mr. Cantone's reliance on *United States v. Feucht*, 462 F. Supp. 3d 1339 (S.D. Fla. 2020) and *United States v. Bertrand*, 2020 WL 2179387 (N.D. Fla. Apr. 29, 2020) is unpersuasive. In *Feucht*, "[t]he Government agree[d] that the defendant's serious medical condition (diabetes) present[ed] an extraordinary and compelling reason that would allow compassionate release under the statute

11

and guideline policy statement." *Feucht*, 462 F. Supp. 3d at 1342 (internal quotation marks omitted). Here, by contrast, the Government disputes that any extraordinary or compelling reasons justify a sentence reduction, *see* Response at 8, and the Court agrees. *Bertrand* is easily distinguishable on its facts: there, the prisoner suffered from "multiple, serious health conditions, including prostate cancer, a pulmonary embolism, diabetes with two related eye surgeries, chronic kidney disease, asthma and hypertension." *Bertrand*, 2020 WL 2179387, at *1 (internal quotation marks omitted). Besides his (treated) hypertension, Mr. Cantone suffers from none of these.

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. And it has caused profound suffering. In the United States alone, more than 26,852,809 people have tested positive for the disease, and over 462,037 Americans have died from it. *See CDC COVID Data Tracker*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Feb. 9, 2021).

The Court is therefore sympathetic to Mr. Cantone's plea and does not intend—in any way—to minimize the threat COVID-19 poses to inmates who are (necessarily) in close quarters with one another. But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). In this respect, former Attorney General William Barr's memo urging the release of particularly vulnerable inmates is also not a get-out-of-jail-free card for every incarcerated person. *See Ballesteros*, 2020 WL 2733647, at *1; *United States v. Burkes*, 2020 WL 2308315, at *2 (S.D. Fla. May 8, 2020) (petitioner's hypertension, coupled with the COVID-19 pandemic, did not constitute "extraordinary and compelling reasons"). Mr. Cantone's

12

ailments therefore do not constitute the kinds of "extraordinary and compelling reasons" that would justify the reduction he is seeking.

Because Mr. Cantone has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV. Home Confinement

Alternatively, Mr. Cantone requests "a home confinement placement." Motion at 19. The Government opposes this request and argues that "this Court has no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion." Response at 16.

The Government is correct: this Court cannot instruct the BOP where to house its inmates. *See United States v. Groover*, 20-12925, Slip Op. at 8 (11th Cir. Feb. 4, 2021) ("It is undisputed that the authority to place a prisoner in home confinement rests solely with the BOP rather than the judiciary."); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. But decision-making authority rests with the BOP." (internal citation omitted)).

In some respects, of course, this discussion is purely academic because the Court could achieve the same result by simply reducing Mr. Cantone's sentence to time served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though,

the Court would have to conclude that Mr. Cantone has carried his burden of showing that he is entitled to that reduction, which, for the reasons outlined above, he has failed to do.

\*\*\*

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that the Defendant's Motion for Compassionate Release [ECF No. 131] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 9th day of February 2021.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record